1  Jonas B. Jacobson (SBN 269912)
   jonas@dovel.com
2  Simon Franzini (SBN 287631)
   simon@dovel.com
3  DOVEL & LUNER, LLP
4  201 Santa Monica Blvd., Suite 600
   Santa Monica, California 90401
5  Telephone: (310) 656-7066
   Facsimile: (310) 656-7069
6
7  Yeremey Krivoshey (SBN 295032)
   ykrivoshey@bursor.com
8  Brittany S. Scott (SBN 327132)
   bscott@bursor.com
9  BURSOR & FISHER, P.A.
   1990 North California Blvd., Suite 940
10 Walnut Creek, CA 94596
   Telephone: (925) 300-4455
11 Facsimile: (925) 407-2700
12
13 *Attorneys for Plaintiff*

14             **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
15                **SAN JOSE DIVISION**

16 KRYSTAL YVETTE LOPEZ, individually
   and on behalf of all others similarly situated,    Case No. 5:22-cv-03069
17
18              *Plaintiff*,                           **CLASS ACTION COMPLAINT**

19              v.                                     **DEMAND FOR JURY TRIAL**

20 TARGET CORPORATION,
21
                *Defendant*.
22
23
24
25
26
27
28

COMPLAINT
Case No. 5:22-cv-03069

1

## <u>Table of Contents</u>

I.      Introduction...................................................................................................... 1

II.     Parties.............................................................................................................. 1

III.    Jurisdiction and Venue..................................................................................... 2

IV.     Divisional Assignment...................................................................................... 2

V.      Facts................................................................................................................. 2

        A.      Defendant makes, markets, and sells Up & Up products prominently
                labeled "Non-Drowsy."......................................................................... 2

        B.      The Non-Drowsy Up & Up Products cause drowsiness........................... 5

        C.      Defendant's Non-Drowsy representations are misleading to reasonable
                consumers............................................................................................. 7

        D.      Plaintiff was misled by Defendant's misrepresentations..................... 10

        E.      Class Action Allegations...................................................................... 11

VI.     Claims............................................................................................................ 13

VII.    Jury Demand.................................................................................................. 21

VIII.   Prayer for Relief............................................................................................. 21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT
Case No. 5:22-cv-03069

**I.      Introduction.**

1.      Defendant makes, sells, and markets "Up & Up" over-the-counter cough medicine, including generic Up & Up versions of brands like DayQuil and Robitussin.  Many Up & Up products contain the active ingredient Dextromethorphan Hydrobromide ("DXM") and state prominently on the front of their label that they are "Non-Drowsy." [1]

2.      Defendant's Non-Drowsy Up & Up Products state prominently on the front of their label that they are "Non-Drowsy" products (juxtaposed against Defendant's nighttime versions that have no such claim and that are known to cause drowsiness).  By prominently labeling these products as "Non-Drowsy," Defendant led Plaintiff and other reasonable consumers to believe that the Non-Drowsy Up & Up Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  But the truth is that products containing DXM—and thus the Non-Drowsy Up & Up Products—do cause drowsiness, and that drowsiness is a common side effect of DXM.

3.      In this way, Defendant misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy Up & Up Products.

4.      Defendant's misrepresentations allowed it to overcharge Plaintiff and other consumers for the Non-Drowsy Up & Up Products.

**II.     Parties.**

5.      Plaintiff Krystal Yvette Lopez is a citizen of California (domiciled in Salinas, California).  The proposed class (identified below) includes citizens of every state within the United States.

6.      Defendant Target Corporation is a corporation organized and existing under the laws of the state of Minnesota, with its principal place of business in Minnesota.  Defendant has been doing business in the State of California during all relevant times.  Defendant manufactures, sells, and/or distributes Up & Up-brand products, and is responsible for the advertising, marketing, trade

---

[1] Throughout this Complaint, Up & Up products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy Up & Up Products."

dress, and packaging of the Non-Drowsy Up & Up Products.  Target manufactured, marketed, and sold the Non-Drowsy Up & Up Products during the class period.

**III.    Jurisdiction and Venue.**

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

8.    The Court has personal jurisdiction over Defendant because Defendant sold Non-Drowsy Up & Up products to consumers in California, including Plaintiff.

9.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold the Non-Drowsy Up & Up Products to consumers in this District, including Ms. Lopez.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling the Non-Drowsy Up & Up Products to Ms. Lopez.

**IV.    Divisional Assignment.**

10.    This action arose in Monterey County (San Jose Division).  As alleged in detail below, Ms. Lopez purchased a Non-Drowsy Up & Up Product in Salinas, California (in Monterey County).  Thus a substantial part of the events giving rise to the claim occurred in Monterey County.

**V.    Facts.**

**A.    Defendant makes, markets, and sells Up & Up products prominently labeled "Non-Drowsy."**

11.    Defendant makes, markets and sells the Non-Drowsy Up & Up Products.

12.    The front label of each Non-Drowsy Up & Up Product prominently states that the product is "Non-Drowsy."  For example:

1

**Up & Up Daytime Cold and Flu Multi-Symptom Relief Softgels[2]**

2

3



4

5

6

7

8

9

10

11

**Up & Up Daytime Cold and Flu Multi-Symptom Relief Liquid[3]**

12

13



14

15

16

17

18

19

20

21

22

23

24

25

26

[2] https://www.target.com/p/daytime-cold-38-flu-relief-softgels-24ct-up-38-up-8482/-/A-11003529#lnk=sametab

27

[3] https://www.target.com/p/daytime-cold-38-flu-multi-symptom-relief-liquid-12-fl-oz-up-38-up-8482/-/A-11046966#lnk=sametab

28

3

1

**Up & Up Maximum Strength Cough+Chest Congestion DM Max[4]**

2

3



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        13.      Further, the Products are sold as "Daytime" products that are meant to be consumed

19    during the day, and offered for sale as an alternative to Defendant's Nighttime Cold & Flu Relief

20    Products (which have no "Non-Drowsy" claim), such as the one pictured below:

21

22

23

24

25

26

27

28
[4] https://www.target.com/p/cough-38-chest-congestion-dm-liquid-raspberry-menthol-8-fl-oz-up-38-up-8482/-/A-12980983

COMPLAINT
Case No. 5:22-cv-03069



14.     In reality, however, the "Daytime" version causes drowsiness.  Accordingly, if a reasonable consumer knew the truth, it would eviscerate the reason that consumers buy Daytime cold and flu relief products in the first place: to avoid drowsiness when they need to be alert.

15.     These representations are materially the same across all Non-Drowsy Up & Up Products.

16.     Based on the prominent "Non-Drowsy" and "Daytime" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is not a side-effect of the products.

17.     Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.     The Non-Drowsy Up & Up Products cause drowsiness.**

18.     In truth, products containing DXM—like the Non-Drowsy Up & Up Products—do cause drowsiness, and drowsiness is a documented side effect of DXM. [5]

---

[5] Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (listing drowsiness as a side effect)

5

19.     In fact, drowsiness is a common side effect at the recommended dosages.  According to a 2017 GlaxoSmithKline presentation on drug labeling, a "common" adverse reaction (i.e., side effect) is one that occurs in 3% or more drug takers and a "very common" side effect occurs in 10% or more drug takers.  Similarly, Pfizer's safety data sheet for DXM drugs states that "drowsiness" is a "common" adverse reaction associated with "clinical use." [6]  For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [7,8]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Up & Up products. [9]

20.     The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side effects of dextromethorphan-containing products. [10]

21.     For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting medicines that contain "dextromethorphan," including specifically DayQuil, which Defendant copies with its Up & Up brand.  As illustrated above (¶11), drugs like DayQuil are "antihistamine free," yet are still banned by the FAA because they have DXM and DXM causes drowsiness: [11]

---

[6] https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBITUSSIN_DM_SYRP_4OZ.pdf

[7] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).

[8] The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence

[9] For example: Up & Up Daytime Cold & Flu Multi-symptom Relief Liquid contains 20 mg of DXM per 30 ml of syrup and the recommended dosage is 30 ml orally every 4 hours.

[10] Sedation is associated with drowsiness. See IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")

[11] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

6

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives** after the last dose (see above). |
|---|---|---|---|---|
| **Cough** | | | | |

### C.   Defendant's Non-Drowsy representations are misleading to reasonable consumers.

22.   The Food and Drug Administration prohibits drug labeling that is "false or misleading." 21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

23.   This case is about Defendant's affirmative, "Non-Drowsy" representation on the Product labels. No FDA regulation allows antitussives containing DXM to be labelled "Non-Drowsy" and the FDA has never considered whether this claim is false and misleading.  (Nor would the FDA ever approve such a claim, because it is in fact false and misleading).

24.   Based on the fact that Defendant labeled the Non-Drowsy Up & Up Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness. Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products (much less a common side effect).  Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [12]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness."

25.   Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth.

---

[12] How to read over the counter (OTC) drug labels, Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm

1
2
3
4
5
6
7
8
9
10



11
12

26.    So Defendant could have simply omitted the false and misleading statements, "Non-Drowsy" and "Daytime" from its products.

13
14
15

27.    Or, if Defendant wanted to say something to indicate that a Non-Drowsy Up & Up Product might cause *less* drowsiness than another product, they could have made a truthful statement to this effect, as other drug makers do.

16
17
18
19

28.    For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":

20
21
22
23
24
25
26
27
28



8

29.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert (like work), or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving is dangerous.

30.     Because Defendant makes and sells the Non-Drowsy Up & Up Products, Defendant researched the known and common side effects of DXM.  This is diligence that a large company like Defendant would do when selling a drug.  As a result, Defendant knew that DXM causes drowsiness.  Furthermore, Defendant controls its labeling, knowingly put on the "Non-Drowsy" and "Daytime" representations, and knows the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading.  For these reasons, Defendant knew that its labeling was false and misleading, or was reckless or willfully blind to this fact.  And as alleged above, Defendant intended that consumers would rely on the "Non-Drowsy" and "Daytime" labeling, so that consumers would purchase more products, pay a price premium, and buy them as alternatives to its "Nighttime" products.

31.     Defendant's false statements increased the demand for Non-Drowsy Up & Up Products and allowed Defendant to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving).  As a result, Defendant was able to charge more for these products than it would have been able to had the labeling been truthful.  Accordingly, as a direct result of Defendant's false statements, Defendant was able to

COMPLAINT
Case No. 5:22-cv-03069

charge a price premium for these products.  As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury.

32.    In addition, because the Non-Drowsy Up & Up Products actually do cause drowsiness, Plaintiff and each class member did not get what they paid for: a cough medicine that does not cause drowsiness.  Instead, they received something that is worth less: a cough medicine that does cause drowsiness.  Plaintiff and each class member sustained an economic injury for this additional reason, i.e., they received something worth less than the price they paid for it.

33.    Moreover, the Non-Drowsy Up & Up Products are sold specifically for use in situations where it is not acceptable for consumers to become drowsy (e.g., while driving, working, or supervising children).  As a result, the products that Plaintiff and each class member did receive in exchange for the price they paid—Non-Drowsy Up & Up Products that cause drowsiness—were not suitable for, and were thus worthless for, their intended purpose.  So the economic injury Plaintiff and each class member sustained consists of the entire purchase price of the products, because what they received was worthless for its intended use.

### D.    Plaintiff was misled by Defendant's misrepresentations.

34.    In or around March 2020, Plaintiff Krystal Lopez bought a Non-Drowsy Up & Up Product (Up & Up Daytime Cold and Flu Multi-Symptom Relief) at a Target in Salinas, California. This was the first time she had purchased the product.  The package said "Non-Drowsy" and "Daytime" prominently on the label, and Plaintiff read and relied on this statement when purchasing the product.  But when Plaintiff took the recommended dose of the medication as directed on the label by Defendant, she became unexpectedly drowsy.  Plaintiff was not on any other medication that would have caused drowsiness, and there was no other potential cause for this drowsiness, aside from the ingredients in the Up & Up medication.  Plaintiff would not have bought the Up & Up medication had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.  The price Plaintiff paid for the Up & Up medication was inflated due to the misleading "Non-Drowsy" and "Daytime" labels, for the reasons set forth above.  In fact, because the product causes drowsiness, it was worthless to her.

10

35.     Plaintiff would purchase Non-Drowsy Up & Up Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

**E.     Class Action Allegations.**

36.     Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy Up & Up Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

37.     For other claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in the identified states (the "**Consumer Protection Subclass**").

38.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy Up & Up Products in California (the "**California Subclass**").

39.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

40.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy Up & Up Products, there are millions of proposed class members.

*Commonality*

41.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

11

- Whether the Non-Drowsy Up & Up Products cause drowsiness;

- Whether Defendant's labeling of the Non-Drowsy Up & Up Products as "Non-Drowsy" and "Daytime" is deceptive and misleading;

- Whether Defendant violated state consumer protection statutes;

- Whether Defendant committed a breach of express warranty; and

- Damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality***

42.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Non-Drowsy Up & Up Products.

***Predominance and Superiority***

43.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

44.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendant's "Non-Drowsy" labeling is false and misleading.

45.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

COMPLAINT
Case No. 5:22-cv-03069

## VI.     Claims.

### Count I: Violations of California Consumer Protection Law and Materially-Similar State Consumer Protection Laws

**(on behalf of Plaintiff and the Consumer Protection Subclass)**

46.     Plaintiff incorporates by reference each and every factual allegation set forth above.

47.     As alleged below, Plaintiff (who lives in California) brings her individual and certain subclass claims based on California consumer protection laws.  At the motion to dismiss stage (pre-certification), her claims are governed by California law.  At certification, Plaintiff intends to certify this count on behalf of the Consumer Protection Subclass, which includes consumers who live in the states listed below:

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| Connecticut | Conn. Gen. Stat. Ann. §§ 42-110, and the following. |

13

48.     Each of these statutes is materially similar to California consumer protection law. Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm.   Defendant's conduct violates each statute's shared prohibitions.

49.     Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendant's conduct, including the false labeling of the Non-Drowsy Up & Up Products and sale of those misleading products to Plaintiff and Class members, violates each statute's prohibitions.

50.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.  Defendant's misrepresentations were misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendant's misrepresentations.

51.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

## Count II: Violation of California's Unfair Competition Law (UCL)

### (on behalf of Plaintiff and the California Subclass)

52.     Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

53.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

54.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

14

1

***The Unlawful Prong***

2    55.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged

3 below and incorporated here.  In addition, Defendant engaged in unlawful conduct by violating the

4 California Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug labeling that is

5 "false or misleading in any particular."

6    ***The Fraudulent Prong***

7    56.    As alleged in detail above, Defendant's "Non-Drowsy" and "Daytime"

8 representations were false and misleading.  Defendant's misrepresentations were likely to deceive,

9 and did deceive, Plaintiff and reasonable consumers.

10    ***The Unfair Prong***

11    57.    Defendant violated established public policy by violating the CLRA and FAL, as

12 alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively

13 declared policy (that of the CLRA, FAL, and Sherman Act).

14    58.    The harm to Plaintiff and the Class greatly outweighs the public utility of

15 Defendant's conduct.  There is no public utility to misrepresenting the side effects of an over-the-

16 counter medication.  This injury was not outweighed by any countervailing benefits to consumers or

17 competition.  Misleading medication labels only injure healthy competition and harm consumers.

18    59.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive,

19 unscrupulous, and substantially injurious to consumers.

20    60.    Plaintiff and the Class could not have reasonably avoided this injury.  As alleged

21 above, Defendant's representations were deceiving to reasonable consumers like Plaintiff.

22                              *    *    *

23    61.    For all prongs, Defendant's misrepresentations were intended to induce reliance, and

24 Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Up & Up Products.

25 Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

26    62.    In addition, classwide reliance can be inferred because Defendant's

27 misrepresentations were material, i.e., a reasonable consumer would consider them important in

28 deciding whether to buy the Non-Drowsy Up & Up Products.

15

63.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

64.   Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

65.   Plaintiff seeks an injunction and equitable restitution (in the alternative to legal relief).

### Count III: Violation of California's False Advertising Law (FAL)
### (on behalf of Plaintiff and the California Subclass)

66.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

67.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

68.   As alleged more fully above, Defendant has falsely advertised Non-Drowsy Up & Up Products by falsely representing that the products do not cause drowsiness and that drowsiness is not a side-effect of the products.

69.   Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

70.   Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Up & Up Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

71.   In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Up & Up Products.

COMPLAINT
Case No. 5:22-cv-03069

72.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members

73.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

74.     Plaintiff seeks an injunction and equitable restitution (in the alternative to legal relief).

**Count IV: Violation of California's Consumer Legal Remedies Act (CLRA)**

**(on behalf of Plaintiff and the California Subclass)**

75.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

76.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

77.     Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

78.     Plaintiff, the other members of the California Subclass, and Defendant has engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

79.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

80.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that the Non-Drowsy Up & Up Products do not cause drowsiness, and that drowsiness is not a side effect of the products, when in fact, the products do cause drowsiness.

17

81.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

82.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

83.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Up & Up Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

84.     In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Up & Up Products.

85.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

86.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

87.     Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

88.     CLRA § 1782 NOTICE.  On May 10, 2022, a CLRA demand letter was sent to Defendant's headquarters and California registered agent, via certified mail (return receipt requested).  This letter provided notice of Defendant's violation of the CLRA, for Plaintiff and the class, and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and the Class within 30 days, Plaintiff will amend to seek all available monetary relief.

COMPLAINT
Case No. 5:22-cv-03069

**Count V: Breach of Express Warranty**

**(on behalf of Plaintiff and the Nationwide Class)**

89.     Plaintiff incorporates by reference each and every factual allegation set forth above.

90.     Plaintiff (who lives in California) brings this claim individually and on behalf of the Nationwide Class.

91.     Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the Non-Drowsy Up & Up Products, issued material, written warranties by representing that the products were "Non-Drowsy" and for "Daytime." This was an affirmation of fact about the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

92.     This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

93.     In fact, the Non-Drowsy Up & Up Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness. Thus, the warranty was breached.

94.     Plaintiff provided Defendant with notice of this breach of warranty, for herself and the class, by mailing a notice letter to Defendant's headquarters and California registered agent, on May 10, 2022.

95.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's false warranty; or (c) they received products that were worthless for their intended purpose.

**Count VI: Breach of Contract**

**(on behalf of Plaintiff and the Nationwide Class)**

96.     Plaintiff incorporates by reference each and every factual allegation set forth above.

97.     Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

98.     Plaintiff and the Class purchased Non-Drowsy Up & Up Products directly from Defendant (e.g., in Target stores or online).

19

99. A valid contract existed between Plaintiff (and the Class) and Defendant.   As part of that contract, Defendant expressly promised Plaintiff and the Class cough medicine that was in fact "Non-Drowsy," i.e., that does not cause drowsiness and that does not have drowsiness as a side effect.

100. Plaintiff and the Class paid for the Non-Drowsy Up & Up Products and performed all their contractual obligations.

101. As alleged in detail above, Defendant materially breached the contract because the Non-Drowsy Up & Up Products are not, in fact, "Non-Drowsy."

102. Defendant's breach was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

## Count VII: Negligent Misrepresentation

### (on behalf of Plaintiff and the California Subclass)

103. Plaintiff incorporates by reference the facts alleged above.

104. Plaintiff alleges this claim individually and on behalf of the California Subclass.

105. As alleged in detail above, Defendant's labeling represented to Plaintiff and Subclass members that the Non-Drowsy Up & Up Products do not cause drowsiness and that drowsiness is not a side effect of these products.

106. These representations were false. As alleged above, the Non-Drowsy Up & Up Products do cause drowsiness and drowsiness is a documented side effect.

107. When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

108. Defendant intended that Plaintiff and Subclass members rely on these representations and Plaintiff and Subclass members read and reasonably relied on them.

109. In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Up & Up Products.

COMPLAINT
Case No. 5:22-cv-03069

110.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

111.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's false misrepresentations; or (c) they received products that were worthless for their intended purpose.

### Count VIII: Quasi-Contract / Unjust Enrichment

### (on behalf of Plaintiff and the California Subclass)

112.    Plaintiff incorporates by reference the facts alleged above.

113.    Plaintiff brings this claim in the alternative to her legal claims.

114.    As alleged in detail above, Defendant's false and misleading labeling caused Plaintiff and the Class to purchase Non-Drowsy Up & Up Products and to pay a price premium for these products.

115.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

116.    Plaintiff and the Class seek restitution.

**VII.    Jury Demand.**

117.    Plaintiff demands a jury trial on all issues so triable.

**VIII.    Prayer for Relief.**

118.    Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;

21

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Dated: May 25, 2022                    Respectfully submitted,

                                       By: */s/ Jonas Jacobson*
                                       Jonas B. Jacobson (SBN 269912)
                                       jonas@dovel.com
                                       Simon Franzini (SBN 287631)
                                       simon@dovel.com
                                       DOVEL & LUNER, LLP
                                       201 Santa Monica Blvd., Suite 600
                                       Santa Monica, California 90401
                                       Telephone: (310) 656-7066
                                       Facsimile: (310) 656-7069

                                       Yeremey Krivoshey (SBN 295032)
                                       ykrivoshey@bursor.com
                                       Brittany S. Scott (SBN 327132)
                                       bscott@bursor.com
                                       BURSOR & FISHER, P.A.
                                       1990 North California Blvd., Suite 940
                                       Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
                                       Facsimile: (925) 407-2700

                                       *Counsel for Plaintiff*

COMPLAINT
Case No. 5:22-cv-03069

1
2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

3
4
5

KRYSTAL LOPEZ, individually and
on behalf of all others similarly
situated,

**CLRA Venue Declaration**

6
7

*Plaintiff*,

8

v.

9

TARGET CORPORATION,

10
11

*Defendant*.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLRA Venue Declaration

I, Krystal Lopez, declare as follows:

1.   I am a named Plaintiff in this action.

2.   In or around March 2020, I purchased a bottle of "Non-Drowsy" Up & Up Daytime Cold and Flu Multi-Symptom Relief at a Target in Salinas, California.

3.   I understand that, because I purchased the product in Salinas, the transaction occurred within the Northern District of California and therefore this is a proper place to bring my California Consumer Legal Remedies Act claim.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

Signature: _____

Krystal Lopez

Salinas, California

1

CLRA Venue Declaration